# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1769

BRUCE E. LANE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  April 16, 2002  )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the briefs for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Patricia Trujillo,* all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge,* and FARLEY and STEINBERG, *Judges*.

FARLEY, *Judge*:  On appeal is a July 26, 1999, decision of the Board of Veterans' Appeals (BVA or Board) that found that a July 1997 BVA decision, denying basic eligibility for VA benefits on the basis of the veteran's character of discharge, was not the product of clear and unmistakable error (CUE).  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a).  For the reasons that follow, the Court will affirm the July 1999 decision of the Board.

## I.  BACKGROUND

The veteran served on active duty in the U.S. Army from September 1967 to February 1971. Record (R.) at 2, 20.  His service included a tour of duty in Vietnam from March 1968 to March 1969, for which he was awarded a number of medals, including the Bronze Star Medal, the Vietnam Service Medal with one Bronze Service Star, the Vietnam Gallantry Cross with Palm Leaf, the National Defense Service Medal, and the Combat Infantryman Badge.  R. at 3, 20, 98.  His service medical records reflect that he sought treatment for sleeplessness in October 1969 and March 1970

and was given Librium as a sleep aid. R. at 55, 60. During his January 1971 separation examination, the veteran responded "yes" when asked whether he had experienced "frequent trouble sleeping," had "frequent or terrifying nightmares," had "attempted suicide," and had "coughed up blood." R. at 71. At the same time, he denied having "nervous trouble of any sort" or "any drug or narcotic habit." *Id*. His February 3, 1971, DD214 Discharge Form reflects that he had been absent without leave (AWOL) for 392 days, including one period of 190 consecutive days, and that he was discharged "under other than honorable conditions." R. at 20.

In an October 1980 VA regional office (RO) "Administrative Decision," the veteran's discharge was "considered to have been issued under conditions [that] preclude payment of VA benefits." R. 111-12. The appellant contested that decision, and, in a July 21, 1997, decision, after VA had apparently misplaced the appeal for many years, the Board determined that the character of the veteran's discharge barred his entitlement to VA benefits. R. at 333-43. The record before the 1997 Board included evidence that pursuant to Presidential Proclamation No. 4313, in May 1976 the appellant had been issued a clemency discharge, and that in February 1977, the Army Discharge Review Board had upgraded his discharge to "under honorable conditions." R. at 337; *see also* R. at 86, 89, 98. The Board also had statements from the appellant describing in detail several traumatic incidents that had occurred in Vietnam and his testimony that while in Vietnam, he had become dependent upon drugs, including heroin, to escape the fear of combat, and that upon his return to the United States, he began going AWOL because he could not cope with army life. R. at 338. The record included private medical records showing treatment for a psychiatric disability, including a 1992 diagnosis of post-traumatic stress disorder. *Id.*

In the 1997 decision, the Board cited 38 U.S.C. § 5303(a) as a bar to benefits under laws administered by VA to a person discharged under conditions other than honorable on the basis of a continuous AWOL period of at least 180 days, unless such person demonstrated that compelling circumstances warranted the prolonged absence. R. at 339. The 1997 Board decision then paraphrased the controlling regulations, stating:

> In determining whether compelling circumstances warranted the prolonged unauthorized absence, the length and character of service exclusive of the period of the unauthorized absence will be considered. This period should generally be of such quality and length that it can be characterized as honest, faithful and meritorious and

2

of benefit to the nation. Additionally, consideration may be given to reasons offered by the claimant including family emergencies or obligations. These reasons should be evaluated in terms of the person's age, cultural background, educational level and judgmental maturity. Consideration should be given to how the situation appeared to the person himself or herself and not how the adjudicator might have reacted. Hardship or suffering incurred during overseas service, or as a result of combat wounds [or] other service-incurred or aggravated disability, is to be carefully and sympathetically considered in evaluating the person's state of mind at the time the prolonged AWOL period began.

R. at 340 (citing 38 C.F.R. § 3.12(c)(6)(i-iii) (1996)). Among the factors that the Board said it considered were the appellant's statements that he was only 18 years old when he enlisted; that he was told he would be an administrative clerk but was instead placed in the infantry; that he was given drugs by his fellow soldiers and became dependant upon those drugs to escape his fears of combat; that he had experienced many traumatic incidents while serving in Vietnam; and that his superiors treated him like "dirt." R. at 338. The BVA found that the veteran's quality and length of service were honest, faithful, meritorious, and of benefit to the nation, but the BVA concluded, "in light of the totality of the evidence of record," that there did not exist compelling circumstances to warrant the prolonged AWOL periods. R. at 341-42. To be more specific, the 1997 Board decision stated:

[The appellant's] combat service certainly would have exposed him to some hardship and/or suffering during overseas service. However, the objective evidence of record, contemporaneous with the appellant's return from overseas duty[,] fails to document the presence of any circumstances [that] support his assertions regarding drug dependence, difficulty with superiors, or an inability to fulfill his duties as assigned due to being in a "state of confusion." There are no records of hospitalization or counseling reports to confirm treatment for any psychiatric symptomatology or substance abuse either upon return from overseas or during the time periods in which the appellant was absent from his unit. In fact, the first evidence of record to suggest either the presence of a psychiatric disorder or substance abuse [is dated] 1992, many years after service discharge, and there is no indication within these records to establish the presence of an acquired psychiatric disorder or a substance abuse disorder in 1970 or 1971.

R. at 341.

In the July 1999 BVA decision here on appeal, the Board found that its 1997 decision did not contain CUE. R. at 17. The Board rejected the appellant's two arguments as to why the 1997 BVA had committed CUE: (1) Its failure to apply 38 C.F.R. § 3.12(e) (2001) (regarding discharge issued through board for correction of records); and (2) its misapplication of 38 C.F.R. § 3.12(c)(6)(i) and

3

(ii) (factors to consider in determining whether compelling circumstances warranted prolonged AWOL). R. at 12-17. Because in his instant appeal to the Court the appellant does not take issue with the Board's determination with respect to 38 C.F.R. § 3.12(e), any appeal as to that part of the 1999 Board decision is deemed abandoned. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). With respect to 38 C.F.R. § 3.12(c)(6)(i) and (ii), the appellant argued to the 1999 Board that the 1997 Board erred "when it failed to give proper weight and consideration to the underlying reason for [his] unauthorized absences" in accordance with the regulation. R. at 9, 417-418. The appellant argued that the 1997 Board did not carefully and sympathetically consider, *"from his point of view,"* the factors that influenced him to go AWOL, such as his youth and immaturity, his problems with drugs and alcohol, and his subsequent development of psychiatric disabilities. R. at 10, 417-421 (emphasis added). Further, the appellant stated that the 1997 Board's reference to no "objective evidence" to document the veteran's alleged reasons for going AWOL improperly imposed a more difficult standard of proof than that required by the regulation. *Id.*

In its decision finding no CUE in the 1997 Board decision, the 1999 Board decision stated that § 3.12(c)(6)(ii) requires the adjudicator to consider "*how the situation appeared to the veteran himself*" when evaluating whether compelling circumstances justified the AWOL periods. R. at 15. The Board concluded, however, that this evaluation does "not equate to what is essentially the veteran's belief that he can offer any number of 'compelling circumstances' without regard to establishing an evidentiary basis for same." R. at 16. The Board stated:

> While consideration of the "compelling circumstances" . . . must be from the veteran's point of view, it must be presumed that the veteran must in some manner back up his claim with some evidence because the regulation is silent as to establishing what kind of proof is needed to successfully plead one or more compelling circumstances. Consideration of one or more factors giving rise to the compelling circumstances from the veteran's point of view would only then apply when a factor was established in a factual sense. The Board acknowledges that in the typical case, a veteran's "age" is easily ascertained by official documents in the file, but since the regulation refers to age in the context of more subjective terms like one's "judgmental maturity," it is logical to conclude that the regulation intends to impart a broad framework from which to judge the case. Hence, in the Board's view, section 3.12(c)(6)(ii) can be construed to allow the Board to examine the record as a whole and determine whether the evidence supports the veteran's claim that one or

4

> more of these factors excused his unauthorized absences. As a result, some cases may be supported by testimonial evidence alone whereas others may demand corroborating evidence.

*Id.* The 1999 Board then concluded that the 1997 Board had considered the veteran's circumstances, but that because it had found no evidence in the record to show how any of the claimed circumstances had played a significant role in the prolonged AWOL periods, the 1997 Board had not committed CUE in determining that the evidence as a whole did not support the appellant's claim. *Id.*

In his brief to the Court, the appellant presents three arguments. First, he argues that the Court's standard of review with respect to a collateral challenge to a previously final BVA decision requires "two separate and distinct review processes." Appellant's Brief (Br.) at 9-16. In his view, a successful CUE challenge should demonstrate *either* reversible error *or* prejudicial error. Id. at 11-15. He argues that in reviewing a CUE challenge, the Court should *first* determine whether the Board properly reviewed the collateral challenge and supported its decision with an adequate statement of reasons or bases, and if the Court finds that it did, the Court should *then* conduct a de novo review of the merits of the collateral challenge. Id. at 10-11. Second, the appellant objects to the 1999 Board's statement that under 38 C.F.R. § 3.12(c)(6)(ii) "it must be presumed that the veteran must in some manner back up his claim with some evidence because the regulation is silent as to establishing what kind of proof is needed to [plead] successfully one or more compelling circumstances." Id. at 17 (citing R. at 16). He argues that the Board cited no authority for this requirement of "objective contemporaneous evidence," R. at 8, 341; that no such requirement is found in the regulation; that the Board has created an evidentiary presumption that does not exist in the law; and that in fact the regulation contemplates a subjective standard of proof. Appellant's Br. at 17-18. In his final argument, the appellant states that even if the Court finds that the 1997 Board did not commit CUE in requiring objective evidence of the veteran's compelling circumstances, the BVA committed CUE in 1997 when it found that the record before it did not contain such evidence. Id. at 21-22; Reply Br. at 4-5.

In response to the appellant's arguments regarding the applicable standard of review in the Court, the Secretary states that the appellant ignored well-established precedent defining the standard of review as "arbitrary and capricious" and limiting successful CUE claims to those that demonstrate

outcome-determinative errors. Secretary's Br. at 17-19. The Secretary also contends that the appellant's interpretation of 38 C.F.R. § 3.12(c)(6) is inconsistent with the plain language of the regulation and would establish "compelling circumstances" based on a veteran's statements alone. *Id.* at 16. The Secretary argues that this interpretation is contrary to the language in the regulation that directs that the reasons a veteran offers for going AWOL are to be "considered" and "evaluated." *Id.* The Secretary argues that the 1997 Board did not misinterpret the regulation and did not err when in evaluating the appellant's state of mind when he went AWOL, it examined the total evidence of record and then determined that compelling circumstances did not exist to warrant the appellant's prolonged AWOL periods. *Id.* at 17. The Secretary concludes, therefore, that the 1999 Board decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and thus that the 1999 Board decision should be affirmed. *Id.* On October 12, 2001, the appellant, pursuant to Rule 28(g) of this Court's Rules of Practice and Procedure, filed a citation of supplemental authorities.

## II. ANALYSIS

"A decision by the Board is subject to revision on the grounds of [CUE]. If evidence establishes the error, the prior decision shall be reversed or revised." 38 U.S.C. § 7111(a). The Code of Federal Regulations states:

> [CUE] is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied.

38 C.F.R. § 20.1403(a)(2001); *see generally Disabled American Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000), *cert. denied*, 121 S. Ct. 1605 (2001). "'In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.'" *Crippen v. Brown*, 9 Vet.App. 412, 418 (1996) (quoting *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc)). "The claimant must provide some degree of specificity as to what the alleged error is, and, unless it is the kind of error that, if true, would be CUE on its face,

6

'persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error.'" *Livesay v. Principi*, 15 Vet.App. 165, 173-74 (2001) (en banc) (quoting *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993)).

## A. Standard of Review

The Court's review of Board decisions evaluating allegations of CUE in prior BVA decisions is limited to whether the Board's evaluation of CUE was "arbitrary, capricious, an abuse of discretion, or  otherwise not in accordance with law," and whether the decision is supported by an adequate statement of reasons or bases.  38 U.S.C. §§ 7261(a)(3)(A), 7104(d)(1); *see Livesay*, 15 Vet.App. at 174; *Russell*, 3 Vet.App. at 315.  If the Board articulates a satisfactory explanation for its decision, "including a rational connection between the facts found and the choice made, the Court must affirm." *Jordan v. Brown*, 10 Vet.App. 171, 175 (1997).  We reject that part of the appellant's first argument that contends that a successful CUE allegation may be based on an error that does not manifestly change the decision's outcome, but rather "requires significant revision of the challenged decision." Appellant's Br. at 13.  This argument, presented by this same counsel, was specifically rejected by the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Bustos v. West*, which held that "CUE must be outcome-determinative." 179 F.3d 1378, 1381 (Fed. Cir. 1999).  In his brief, counsel failed to cite to either *Bustos* or this Court's watershed en banc opinion in *Russell, supra*, the source of the "manifestly changed the outcome" language expressly adopted by *Bustos*.

We likewise reject that part of the appellant's first argument that contends that a CUE challenge is a "question of law" that entitles an appellant to both a review of the Board's decision, as well as a review by this Court on the merits.  Although this Court has held that it will conduct de novo review of whether a viable CUE allegation has been presented to the Board, the Court has also consistently held that the question whether the BVA erred in determining that a prior decision did not contain CUE is reviewed by this Court under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review.  38 U.S.C. § 7261(a)(3)(A); *see Phillips v. Brown*, 10 Vet.App. 25, 30 (1997); *see also Andre v. West*, 14 Vet.App. 7, 11-12 (2000) (per curiam order) (holding same standard-of-review argument "meritless" and admonishing counsel

for "arguing what he thinks the law should be without recognizing existing precedent"); *Russell, supra*.

## B. Board's Interpretation of 38 C.F.R. § 3.12(c)(6)

A person discharged under conditions other than honorable on the basis of an AWOL period of at least 180 days is barred from receipt of VA benefits "unless such person demonstrates to the satisfaction of the Secretary that there are compelling circumstances to warrant such prolonged unauthorized absence." 38 U.S.C. § 5303(a). Judicial review of the Secretary's "satisfaction" may be subject to some question. *See Malone v. Gober*, 10 Vet.App. 539, 544-45 (1997); *Tulingan v. Brown*, 9 Vet.App. 484, 490 (1996) (Farley, J., concurring) (stating that review of VA decision under a statute requiring "evidence satisfactory to the Secretary" would constitute "impermissible judicial usurpation of a responsibility committed by statute to the Secretary; i.e., "Stated another way, how is the Court supposed to measure the Secretary's satisfaction? With a Ouiji board? A mood ring?"). However, "[e]ven where a matter is left to the discretion of the Secretary by statute, the Secretary [is] bound by any limitations placed upon the exercise of that discretion by regulation . . . ." *Malone*, 10 Vet.App. at 545. The controlling regulation here describes factors to be considered in making the "compelling circumstances" determination. 38 C.F.R. § 3.12(c)(6) (1996). One factor to be considered is the quality and length of the veteran's service, which the 1997 Board decision found here to be "honest, faithful and meritorious." R. at 341; *see* 38 C.F.R. § 3.12(c)(6)(i) (1996). The adjudicator must also consider the reasons the appellant gives for going AWOL:

> Reasons which are entitled to be given consideration when offered by the claimant include family emergencies or obligations, or similar types of obligations or duties owed to third parties. The reasons for going AWOL should be evaluated in terms of the person's age, cultural background, educational level and judgmental maturity. Consideration should be given to how the situation appeared to the person himself or herself, and not how the adjudicator might have reacted. Hardship or suffering incurred during overseas service, or as a result of combat wounds [or] other service-incurred or aggravated disability, is to be carefully and sympathetically considered in evaluating the person's state of mind at the time the prolonged AWOL period began.

38 C.F.R. § 3.12(c)(6)(ii).

The appellant argues in essence that the 1997 BVA erred in requiring objective contemporaneous evidence of his circumstances and thus erred in looking to the evidence as a whole

for support of his stated reasons for going AWOL. However, neither the statute nor the implementing regulation directs the adjudicator simply to accept any and all reasoning from a claimant. If so construed, the claimant would impermissibly become the final adjudicator of his own claim. Instead, the statute directs that a claimant "demonstrate[] to the satisfaction of the Secretary that there are compelling circumstances," suggesting a requirement of some proof of the offered circumstances and giving the Secretary considerable, although not unfettered, discretion in weighing that proof. 38 U.S.C. § 5303(a); *see also Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991)("[P]lain meaning [of a statute] must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'"), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); WEBSTER'S NEW WORLD DICTIONARY 367 (3d ed. 1988) (defining "demonstrate" as "to show by reasoning; prove").

Further, the regulation requires that the reasons offered be "evaluated" in light of the veteran's age, background, and maturity, and that the particular hardships, as they appeared to the veteran, be "carefully and sympathetically considered" in evaluating his state of mind at the time of his absences. 38 C.F.R. § 3.12(c)(6). In order to "evaluate" and "consider," it is reasonable that the adjudicator look to factors other than the veteran's own statements why he went AWOL and look to the totality of the evidence of record. It is evident from its written decision that the 1997 Board considered the reasons offered by the appellant for his extended AWOL periods but determined that other evidence of record did not adequately support the appellant's statements and that without such support, those statements did not "demonstrate to the Secretary's satisfaction" compelling circumstances to warrant the prolonged unauthorized absence. 38 U.S.C. § 5303(a); *see* R. at 341. In reviewing the 1997 Board decision for CUE, the 1999 Board decision likewise construed the regulation as requiring some type of evaluation by the adjudicators of the veteran's offered reasons, adequately explained its reasoning for this construction, and determined that the 1997 Board decision, which was based on the totality of the evidence, was not in error. R. at 16. Because we interpret "demonstrate" to permit the Secretary, based upon the facts of a particular case, to require that a claimant do more than merely state that his or her particular situation was "compelling," and "evaluate" and "consider" to permit the Secretary to do more than merely accept whatever a claimant might offer, we hold that the 1999 Board decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in

9

accordance with law," and that the Board's statement of reasons or bases in that decision, as described above, was adequate. 38 U.S.C. § 7261(a)(3)(A); *see Russell, supra*; *cf. Malone*, 10 Vet.App. at 545 (holding that statute stating "nursing home care may be furnished" leaves decision to Secretary, and although regulations promulgated by Secretary provide guidelines for making such determination, they do not "substantively or procedurally" limit that discretion).

## C. Board's Determination that "Compelling Circumstances" Did Not Exist

The appellant's final argument, that the 1997 Board committed CUE when it found that the record did not contain adequate objective evidence to render his reasons "compelling," amounts to no more than a disagreement with how the Board weighed the facts and, as such, cannot serve as a basis for establishing CUE. *See* 38 C.F.R. § 20.1403(d)(3) (2001); *Crippen* and *Fugo*, both *supra.* The Court notes that although the appellant in his reply brief (*see Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (holding that raising issue for first time in reply brief is contrary to Court's Rules of Practice and Procedure), referred to evidence of record (Reply Br. at 5 (citing R. at 55, 60, 71, 157-58, 195, 254-56)) that may raise an inference that he was experiencing mental problems at the time of his AWOL and that might in combination with other evidence demonstrate "compelling circumstances" for his AWOL periods, the appellant has not provided "persuasive reasons" why such evidence by itself makes his stated reasons for going AWOL "compelling" and thus has not demonstrated that any error in failing to consider that evidence would have been outcome determinative. Moreover, despite the appellant's repeated suggestion that the Secretary did not "sympathetically" consider the circumstances the veteran faced at the time of his AWOL, the 1997 Board decision does recite the claimed circumstances but finds them insufficient to excuse his prolonged AWOL. Although a different adjudicator may have concluded differently, we may not make such a determination and are restricted to determining whether the 1999 Board abused its discretion or acted arbitrarily or contrary to law. *See* Part II.A, *supra.* Because we conclude that the 1999 Board did not abuse its discretion in determining that the 1997 BVA did not commit CUE in considering whether the particular circumstances in this case were "compelling," we affirm the 1999 BVA decision.

D. Supplemental Authority

On October 12, 2001, the appellant submitted a citation to supplemental authority, arguing that under *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001), "unless the [C]ourt is prepared to reverse the Board's decision, then the CUE claim must be remanded for readjudication by the Board utilizing the *Hodge* [*v. West*, 155 F.3d 1356 (Fed. Cir. 1998)] standard as mandated by *Roberson*." Supplemental Authority at 2; *see also* U.S. VET. APP. R. 28(g) (citation of supplemental authority). We reject the appellant's argument and hold that *Roberson* is not dispositive here.

In *Roberson*, the Board held that the claimant did not demonstrate CUE in a 1984 RO decision based on the alleged failure of the RO to consider a claim for a rating of total disability based upon individual unemployability (TDIU). *Roberson, supra.* In reversing this Court's affirmance of that BVA decision, the Federal Circuit held that if a veteran submits evidence of a medical disability (for which he is in turn awarded service connection), makes a claim for the highest rating possible, and submits evidence of unemployability, as the veteran had in that case, then VA must consider a TDIU rating, even if not specifically requested by the veteran. 251 F.3d at 1382-85. Accordingly, the case was remanded for a determination on the still-pending TDIU claim. *Id.* The Federal Circuit included the following statement:

> In *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998), we . . . determined that Congress has mandated that the VA is "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." We see no basis for applying a different standard to a CUE claim, and we hold that DVA is thus required to consider a CUE claim using the standard of *Hodge*.

*Robertson,* 251 F.3d at 1384. In *Roberson* and in *Hodge*, the adjudication error was related to the development of the underlying claim, and thus at issue was the question of what standard was to be used in the evidentiary development of those claims. Here, however, the appellant does not challenge the character or development of the evidence during the initial adjudication; his allegation of CUE is based upon VA's interpretation of a regulation. Moreover, *Roberson*, *supra*, involved a situation where the Federal Circuit applied the *Hodge* standard in addressing the CUE determination that was before it in order to find and require development of a non-CUE claim that was still open and pending before VA. Accordingly, because in the instant case the appellant has not raised any argument as to a pending non-CUE claim, any *Hodge* standard of development is inapplicable.

11

### III. CONCLUSION

Upon consideration of the foregoing, the July 26, 1999, decision of the Board of Veterans' Appeals is AFFIRMED.