# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-2904

EARL MILLER, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided                March 6, 2017)

*Matthew J. Pimentel*, of Providence, Rhode Island, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Shondriette D. Kelley*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, SCHOELEN, *Judge*, and HAGEL, *Senior Judge*.[1]

HAGEL, *Senior Judge*: Earl Miller appeals through counsel a June 5, 2015, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability rating in excess of 10% for peripheral neuropathy of the left foot.[2] Mr. Miller's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). The question before the Court is the proper interpretation of the following statement: "When the involvement is wholly

---

[1] Judge Hagel is a Senior Judge acting in recall status. *In re: Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 15-16 (Dec. 21, 2016).

[2] The Board remanded the matters of entitlement to a total disability rating based on individual unemployability and of whether a reduction in the disability rating assigned for diabetic retinopathy with cataracts from 30% to noncompensable effective May 11, 2015, was proper. Those matters are not before the Court at this time. *See* 38 U.S.C. § 7266(a) (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

sensory, the rating should be for the mild, or at most, the moderate degree." 38 C.F.R. § 4.124a (2016).

Neither party requested oral argument within 14 days of the date on which the reply brief was filed, *see* U.S. VET. APP. R. 34(b), nor did the parties identify issues that they believe require a precedential decision. Nevertheless, the Court observes that this issue has been presented to the Court on several previous occasions and, in each instance, has been adequately decided by single-judge non-precedential memorandum decisions. In light of the fact that multiple appeals have raised the same issue, the Court concludes that this issue is one of continuing public interest–a factor warranting a precedential decision. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); U.S. VET. APP. R. 35(e)(2). Accordingly, the matter was referred to a panel of the Court on February 2, 2017. After the docket memorialized the Court's decision that the appeal presented an issue requiring a precedential decision, Mr. Miller moved, out of time, for oral argument. On March 2, 2017, the Court denied the motion to file a motion for oral argument out of time.

Because the language at issue establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory, and because the Board adequately explained its determination that Mr. Miller is not entitled to a disability rating in excess of 10%, the Court will affirm the June 2015 Board decision.

## I. FACTS

Mr. Miller served on active duty in the U.S. Army from February 1967 to January 1969, including service in Viet Nam.

In December 2009, a VA regional office granted Mr. Miller's claim for benefits for peripheral neuropathy of the left foot associated with type 2 diabetes mellitus and assigned a 10% disability rating. In April 2010, rather than file a Notice of Disagreement with that decision, Mr. Miller sought an increased disability rating.

In June 2010, Mr. Miller underwent a VA peripheral nerves examination. He reported constant soreness and occasional numbness in his feet and inability to walk more than 4 or 5 blocks, to stand for longer than 15 to 20 minutes, to run at all, or to climb more than one flight of stairs. He also reported stumbling and falling three times in the past year. The examiner, nurse practitioner Jill

Messer, recorded that Mr. Miller walked with a slight limp and with the aid of a cane. She concluded that he suffered from peripheral neuropathy secondary to diabetes mellitus.

In September 2010, the regional office continued the 10% disability rating assigned for Mr. Miller's service-connected peripheral neuropathy of the left foot. Mr. Miller filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

The record contains a report of a June 2012 private physical examination conducted by Roel Laygo, M.D. Mr. Miller reported to Dr. Laygo that he experienced "numb, tingling, sometimes burning feet." Record (R.) at 837.

In May 2014, Mr. Miller underwent a VA peripheral neuropathy examination, conducted by certified physician's assistant Lisa Kilgore-Christensen. Mr. Miller reported a constant sensation of "walking on pins and needles," as well as numbness on the bottoms of his feet. R. at 123. He advised Ms. Kilgore-Christensen that he used a cane to walk because "when he walks he feels like he cannot feel the floor underneath him and is afraid he is going to fall." *Id.* Mr. Miller reported mild pain, paresthesias, and numbness in his left lower extremity. Light touch/monofilament testing and cold sensation testing of Mr. Miller's left lower extremity were normal. Vibration sensation was absent in the lower left extremity, but position sense was normal and there was no muscle atrophy or trophic changes. Ms. Kilgore-Christensen diagnosed mild incomplete paralysis of the left sciatic nerve. She stated that Mr. Miller's condition did not affect his ability to work.

In March 2015, Mr. Miller underwent yet another VA peripheral neuropathy examination. He again reported burning and tingling sensations in his feet. He also reported severe constant pain, moderate paresthesias, and moderate numbness of the left lower extremity. Muscle strength testing was normal and there was no muscle atrophy. Light touch testing revealed decreased sensation in the left foot and toes. The examiner, Steven Cox, M.D., recorded: "[Mr. Miller] uses a cane to walk, and he favors his right lower extremity and has a limp. He walks very slow without the cane with a noticeable limp from favoring the right lower extremity." R. at 1191. Dr. Cox determined that the cause of Mr. Miller's abnormal gait was his service-connected peripheral neuropathy. Dr. Cox diagnosed mild incomplete paralysis of the left sciatic nerve. In response to whether Mr. Miller's condition affected his ability to work, Dr. Cox wrote:

3

> [Mr. Miller] uses a cane to ambulate and has difficulty with prolonged standing[,] probably as [a] result of the peripheral neuropathy related to his diabetes mellitus. He has a noticeable limp and does have both upper and lower extremity pain and numbness which is multifactorial but contributed to by the diabetic neuropathy as demonstrated on nerve conduction velocity studies as noted. I do not feel [he] is employable because of his peripheral neuropathy.

R. at 1196.

In April 2015, Mr. Miller and his wife testified before a Board member via video conference. Mr. Miller reported that he could not feel the bottoms of his feet and that he fell quite often, including three times already on the day of the hearing. The transcript reveals that Mr. Miller was using a wheelchair on the day of the hearing and that he stated that he used a cane regularly. Mr. Miller's wife testified that he fell at least three times a day. She reported that she had stopped working so that she could take care of Mr. Miller and that they had moved their bedroom to the first floor in light of Mr. Miller's propensity to fall. Mr. Miller testified that he experienced a decrease in his muscles in his left lower extremity and that he lacked coordination in his feet, both due to peripheral neuropathy. Finally, he testified that his left leg and foot were weak and gave way often.

In June 2015, the Board issued the decision on appeal, denying Mr. Miller entitlement to a disability rating in excess of 10% for left foot peripheral neuropathy. This appeal followed.

## II. PARTIES' ARGUMENTS

On appeal, Mr. Miller argues that the Board failed to adequately explain its determination that he was not entitled to a disability rating in excess of 10% for his service-connected left foot peripheral neuropathy.

Mr. Miller's disability is rated under Diagnostic Code 8620, which is located in 38 C.F.R. § 4.124a, concerning "Diseases of the Peripheral Nerves." For all diseases of the peripheral nerves, the rating schedule instructs:

> The term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. The ratings for the

4

peripheral nerves are for unilateral involvement; when bilateral, combine with application of the bilateral factor.

38 C.F.R. § 4.124a (2016).

Mr. Miller's argument is, in short, that, because § 4.124a states that peripheral nerve disorders that are "wholly sensory" (that is, manifested by only sensory-based symptoms) are to be rated as mild or moderate at most and assigned disability ratings of 10% or 20%, respectively, a peripheral nerve disorder that is more than "wholly sensory" (that is, manifested by both sensory and non-sensory-based symptoms) must be rated as at least moderately severe and assigned a disability rating of at least 40%. Because the Board failed to consider this theory, Mr. Miller contends that the Board failed to adequately explain why he was not entitled to a disability rating in excess of 10%.

For his part, the Secretary argues that the "wholly sensory" language of § 4.124a creates a ceiling–that is, a maximum disability rating–for wholly sensory conditions, rather than a floor–or minimum disability rating–for conditions that are more than wholly sensory.

### III. ANALYSIS

There is no dispute between the parties that Mr. Miller's peripheral neuropathy is more than "wholly sensory" in nature. The dispute is whether § 4.124a's statement that wholly sensory peripheral neuropathy should be rated as no more than moderate in degree means that peripheral neuropathy that is *more* than wholly sensory must be, automatically and at a minimum, rated as moderately severe.

#### A. Plain Language

The question of interpretation of this regulation is a matter of first impression for the Court. The "interpretation of a . . . regulation is a question of law" that the Court reviews de novo. *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). As always, to discern the meaning of a regulation, we begin with the plain language of the regulation. *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("We begin with the language of the . . . Act itself."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations), *superseded by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005). "[I]f

the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)).

The Court finds that, based on its plain language, the note preceding § 4.124a provides only a maximum disability rating for wholly sensory manifestations of incomplete paralysis of a peripheral nerve. The note contains no mention of non-sensory manifestations, and the Court declines to read into the regulation a corresponding minimum disability rating for non-sensory manifestations, as Mr. Miller proposes. Although the note preceding § 4.124a directs the claims adjudicator to award no more than a 20% disability rating for incomplete paralysis of a peripheral nerve where the condition is productive of  wholly sensory manifestations, it does not logically follow that any claimant who also exhibits non-sensory manifestations must necessarily be rated at a higher level. There is no support for this proposition in the regulation.

The Court acknowledges that Mr. Miller relies not just on the plain language of the regulation, but also on VA's *Adjudication Procedures Manual* (*Manual*). He argues that the *Manual* "defines mild incomplete paralysis as demonstrating 'subjective symptoms or diminished sensation;' moderate symptomology as the 'absence of sensation confirmed by objective findings;' and severe symptomology as 'more than sensory findings are demonstrated, such as atrophy, weakness, and diminished reflexes.'" Appellant's Brief (Br.) at 7 (quoting *VA Adjudication Procedures Manual*, M21-1MR, Part III, Subpart iv, Chapter 4, § G(4)). Accordingly, he contends that the *Manual* supports his interpretation of § 4.124a as requiring a rating of at least moderately severe, if not severe, where there is more than simply sensory involvement.

The Court, however, need not consider the *Manual* in interpreting § 4.124a, as the Court has already concluded that the language of the regulation is plain. *See Tropf*, 20 Vet.App. at 320. Moreover, the Court notes that, in June 2016, after the briefs were filed in this matter, the Secretary amended the *Manual* "to further clarify the intent of VA's policy," Secretary's Br. at 10, and the relevant portion of the *Manual* now explains:

> ***Important:*** This provision ***does not*** mean that if there is any impairment that is non-sensory (or involves a non-sensory component) such as a reflex abnormality, weakness or muscle atrophy, the disability must be evaluated as greater than moderate. Significant and widespread sensory impairment may potentially indicate the same or even more disability than a case involving a minimally reduced or increased reflex or minimally reduced strength.

6

M21-1, Part III, subpt. iv, Ch. 4, § G(4)(b).

## B. Reasons or Bases

To the extent that Mr. Miller argues generally that the Board failed to adequately explain why he is not entitled to a disability rating in excess of 10% for peripheral neuropathy of the left foot, the Court disagrees.

The Board explained:

> After considering the [medical and lay] evidence, the Board finds that [Mr. Miller] is not entitled to a rating in excess of 10[%] for his service-connected left foot peripheral neuropathy. The evidence of record documented pain and intermittent sensory deficits in the left foot. Moreover, the May 2014 and March 2015 VA examination[s] also characterized the level of disability as mild, which is the criteria for a 10[%] rating under this code. Reflexes have [been] consistently found to be normal with no findings of muscle atrophy or decreased strength. Further, while [Mr. Miller] reported that he was unable to feel his foot at the April 2015 Board hearing, objective examination conducted in March 2015 found that sensation in the foot and toes were decreased. Moreover, a May 2014 VA examination found sensation in the foot to be normal[,] and a June 2010 VA examination found light touch sensation to be normal. Objective examination during the course of the appeal has therefore found sensation to be only intermittently decreased.
>
> Additionally, while [Mr. Miller] has asserted that he frequently falls due to being unable to feel his feet, the Board again notes that objective examination has found only intermittent decreased sensation. An April 2015 VA treatment note suggests that [Mr. Miller's] March 2015 fall was the result of slipping while exiting his car, not his left foot peripheral neuropathy. Further, there is nothing in the clinical record to suggest that [Mr. Miller] frequently falls as a result of his left foot peripheral neuropathy. A rating in excess of 10[%] is therefore not warranted for peripheral neuropathy of the left foot[,] as muscle atrophy, loss of reflexes[,] and absent sensation were not found on objective examination. 38 C.F.R. § 4.124a, [Diagnostic Code] 8620.

R. at 12. This discussion demonstrates that the Board considered both the objective and subjective evidence of record and concluded that, on the whole, Mr. Miller's disability is properly rated 10% disabling. The Court finds the Board's analysis sufficient to inform Mr. Miller of the reasons for its determination and to permit review by the Court. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

Although Mr. Miller argues that his symptoms demonstrate a greater degree of severity, his argument is with the weight the Board afforded the various pieces of evidence. It is the Board's duty to weigh the evidence, and a mere allegation that the Board improperly weighed the evidence is not sufficient to demonstrate that the Board clearly erred. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995).

## IV.  CONCLUSION

Upon consideration of the foregoing, the June 5, 2015, Board decision is AFFIRMED.